FREDERICK H. PRICE and Another, Copartners, Doing Business under the Firm Name and Style of F. H. PRICE & COMPANY, Respondents, *v.* SHAWMUT STEAMSHIP COMPANY, Appellant.

Second Department, December 5, 1924.

Carriers — carrier of goods — action to recover for loss of six cases of narcotics shipped by plaintiff's assignor — cases were packed in Washington and shipped to assignor at New York city — after remaining in possession of assignor in New York city for one month cases were delivered to defendant — allegation of conversion not important since action was tried on theory of damages for breach of contract — evidence established that cases were in good condition when received by defendant — judgment reversed, however, for error in charge that jury could presume that if goods were in good condition when shipped from Washington that condition continued.

In an action by the assignee of the American Relief Administration to recover for the loss of six cases of narcotics which were shipped by the assignor on one of the defendant's ships, the fact that the complaint contained allegations that the goods were converted by the defendant will not deprive the plaintiff of the right

to recover though conversion is not shown, since the case was tried upon the theory that the action was brought for damages for the breach of the contract of carriage.

The evidence was sufficient to justify the jury in finding that the cases were in good condition when delivered to the defendant in New York city, since it appears that they were packed by the purchasing officer of the American Red Cross and were in good condition when delivered to an express company in Washington, D. C.; that they were delivered to the American Relief Administration in New York city in good condition and were properly cared for in its warehouse for about one month; that the cases were then delivered to the defendant in apparent good order and it was expressly stipulated by the American Relief Administration that the cases should be in charge of the second officer during transportation; that the cases were not in the immediate charge of the second officer but were packed with other merchandise and upon arrival at Hamburg it was found that they had been tampered with and a part of the narcotics stolen.

But the judgment in favor of the plaintiff must be reversed for the error contained in the charge of the trial court to the effect that if the jury found that the merchandise was in good condition when packed and shipped from Washington, they would be entitled to presume that it continued in good condition until the contrary was shown by the defendant. This presumption applies only where the transportation is continuous over the lines of connecting carriers, and it cannot apply in this case since the goods came into the possession of the American Relief Administration in New York city after they were shipped from Washington.

APPEAL by the defendant, Shawmut Steamship Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Queens on the 14th day of April, 1924, upon the verdict of a jury, and also from an order, made on the 9th day of April, 1924, granting plaintiffs' motion for an extra allowance of five per cent on the amount of the verdict.

*Arthur W. Clement*, for the appellant.

*Neil P. Cullom* [*James E. Freehill* with him on the brief], for the respondents.

YOUNG, J.:

The action was brought by the plaintiffs, as assignees of the American Relief Administration, to recover for the loss of six cases of narcotics shipped by the American Relief Administration on February 15, 1922, from New York city to Hamburg on one of the defendant's ships. It appears that these narcotics had been purchased from the Laboratory of the United States Treasury Department and had been packed by Dr. Philips, the purchasing officer of the American Red Cross. The narcotics were to be used in relief work in Russia. They were packed in wooden boxes and shipped from Washington to the American Relief Administration, 70 West street, New York city, which was the business house of

F. William Gertzen & Company. It seems that the American Relief Administration had a room at this address where its goods were stored. The evidence showed that the goods were carefully packed and strapped before they were delivered to the express company in Washington, and a messenger of the American Red Cross went with the goods from Washington to the railroad station at Communipaw, N. J., where the goods were delivered to another employee of the express company, and a receipt taken. It was also shown that the goods were then taken by employees of the express company to 70 West street, where they were delivered and a receipt taken. It also appeared that after the goods arrived at 70 West street, they were placed in a room in the warehouse of F. William Gertzen & Company, and there was evidence to show that the boxes were in good condition when they arrived and were properly taken care of while the shipment remained in possession of the American Relief Administration at that place. The goods remained at 70 West street for twenty-eight days, and were then taken by truck from the warehouse to the pier of the steamship company and delivered to the defendant, and a receipt taken. This receipt states that the goods were received in apparent good order, and the defendant, by its answer, admits that the defendant, on February 15, 1922, received from the American Relief Administration, Inc., six cases said to contain morphine, cocaine and opium. It also appears that the shipper had taken extra precaution for the safety of the shipment, arranging that the shipment should be " in charge of second officer." In spite of this precaution, the goods were placed in hatch No. 5 along with other merchandise as to which no special arrangement had been made, and according to the testimony some fifty tons of other merchandise were placed around and on top of this shipment. The vessel arrived at Hamburg on March 2, 1922, and while it was being unloaded, and after it was unloaded upon the pier, it was discovered that five of the six boxes had been tampered with and that a portion of the shipment had been removed and cobble stones or paving blocks had been put into the boxes in place of the narcotics removed.

Appellant raises a number of questions upon this appeal. It insists that the action was brought for conversion and that no conversion was shown. It is true that the complaint does allege that the defendant converted the missing merchandise to its own use, but, in my opinion, the action was clearly brought for damages for the breach of the contract of carriage. The case was tried upon this theory and although the trial justice stated in his charge that the action was for conversion, I do not think the record sustains this assertion. It is probably true that, technically, the

failure to deliver the goods by a bailee for hire by reason of negligence constitutes conversion. (*Claflin* v. *Meyer*, 75 N. Y. 260.)

Appellant also contends that plaintiffs failed to show that the contents of the cases were intact at the time the shipment was delivered to the defendant. I think it is clear, however, that the evidence was ample to justify the jury in so holding, and a review of the case presents nothing to my mind calling for interference with the judgment, except as to one point in the charge of the learned trial justice.

The court stated as follows: " So, the question that you have to decide in this case comes down to the simple proposition as to when the change in the condition, if a change took place, actually occurred. I am going to charge you in this wise, at the request of the plaintiff, that if the jury finds that this merchandise was in good order when packed and shipped from Washington until the contrary is shown it must be presumed to have continued in that condition. The general rule is that things once proved to have existed in a certain state are presumed to have continued in that state until the contrary is established by evidence, either direct or presumptive."

To this instruction defendant's counsel excepted as follows: " Mr. Clement: I except to so much of your Honor's charge wherein in words or substance your Honor stated that ' if the jury finds that this merchandise was in good order when packed and shipped from Washington until the contrary is shown it must be presumed to have continued in that condition. The general rule is that things once proved to have existed in a certain state are presumed to have continued in that state until the contrary is established by evidence either direct or presumptive.' I respectfully except to that portion of your Honor's charge to the jury."

In my opinion this charge is erroneous and necessitates a reversal of the judgment. There can be no doubt that the general rule that things once proved to have existed in a particular state are to be presumed to have continued in that state until the contrary is established by evidence, either direct or presumptive, applies to goods delivered to be transported over several connecting railroads or lines. This doctrine was laid down in *Smith* v. *New York Central R. R. Co.* (43 Barb. 225; affd., 41 N. Y. 620), and has been reiterated in many subsequent cases. The reason for the rule seems to be that the goods so shipped are not in the possession of the consignor and so it is difficult or impossible for the shipper to ascertain where the loss occurs.

This rule, however, so far as I can find, applies only where the property shipped is, during the shipment, in the custody of a carrier or a series of connecting carriers, and has never been held

to continue over a period where the shipment comes again into the possession of the consignor. It must be conceded that when the consignment of the narcotics in question arrived in New York city and came into the possession of the consignee at 70 West street, that transaction was completed. No doubt, the presumption of continuity of contents applied to that shipment until it was complete, but when the goods were delivered to the American Relief Administration at the destination called for, when shipped from Washington, there could not be, I think, any further presumption of continuity as to the condition of the packages as shipped. These goods again came into the possession of the owner and remained in its possession and under its control for twenty-eight days when they were taken out of the warehouse and a new shipment began under a new bill of lading by which they were sent to Hamburg. The charge of the learned trial justice in effect instructed the jury that plaintiffs were entitled to recover without further proof of the condition of the goods after being shipped in good order from Washington. It is clear, I think, that there was no liability on the part of the defendant unless the plaintiffs showed that the goods were in the boxes in good order when the shipment was delivered to the defendant in New York. Of this, plaintiffs did in fact offer substantial evidence, but the charge permitted the jury to find for the plaintiffs without considering it.

I, therefore, recommend that the judgment be reversed, upon the law, and a new trial granted, with costs to abide the event.

KELLY, P. J., RICH, JAYCOX and MANNING, JJ., concur.

Judgment reversed upon the law, and a new trial granted, with costs to abide the event.